UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH B. SHEA, | * |
| Plaintiff, | * |
| v. | * |
| | * Civil Action No. 17-cv-12233-ADB |
| PETER MILLETT and ALM RESEARCH LLC, | * |
| Defendants. | * |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS**

BURROUGHS, D.J.

On October 17, 2017, Plaintiff Joseph B. Shea filed a complaint ("Compl.") against Defendants Peter Millett and ALM Research LLC ("ALM") in Middlesex Superior Court, seeking recovery of unpaid royalties for services rendered. [ECF No. 1-1]. Defendants jointly removed the state court action to this Court on November 13, 2017. [ECF No. 1]. Shea brought claims against Millett for breach of contract, promissory estoppel, declaratory judgment or injunctive relief, and a violation of Mass. Gen. Laws Chapter 93A, § 11, and also asserted the Chapter 93A claim against ALM. Now pending is Defendants' Partial Motion to Dismiss, which seeks dismissal of the Chapter 93A and promissory estoppel claims against Millett, and dismissal of the Chapter 93A claim against ALM. [ECF No. 7].[1] For the reasons set forth below, the Court GRANTS Defendants' motion.

---

[1] Defendants have not moved to dismiss the claims for breach of contract and declaratory judgment or injunctive relief.

1

I.    FACTS ALLEGED IN THE COMPLAINT[2]

Millett, an orthopedic surgeon residing in Colorado, developed a medical product for arthroscopic shoulder surgery. See Compl. ¶¶ 2, 5–7. Millett unsuccessfully sought for years to obtain a royalty agreement with Arthrex, Inc. ("Arthrex"), a medical device and research company. Id. ¶ 6. In 2010, Millett approached Shea, a Massachusetts resident and former sales representative for a company affiliated with Arthrex, to request Shea's assistance in brokering a royalty agreement between Millett and Arthrex. Id. ¶ 7. Millett offered Shea 15% of any royalties paid by Arthrex for five years in exchange for Shea's services. Id. ¶ 8. Shea responded that he would only accept an arrangement in which he would be compensated throughout the life of any royalty agreement he brokered, and proposed instead that he receive 10% of all royalties over the life of any potential royalty agreement between Arthrex and Millett. Id. ¶ 9. Millett accepted Shea's proposal, and Shea proceeded to market Millett's product to several medical device firms. Id. ¶¶ 9–10.

Over the next six months, Shea generated interest in Millett's product from Arthrex's competitors. Id. ¶ 11. Ultimately, as a result of Shea's efforts, Arthrex entered into a royalty agreement with Millett. Id. Millett then began to remit quarterly payments to Shea from the royalties he received from Arthrex, as agreed. Id. ¶ 12. As the years passed, however, Millett periodically attempted to condition future payments on Shea's agreement to shorten the term of the agreement without consideration. Id. ¶ 13. Shea rebuffed these efforts. Id. On one occasion in May 2012, Millett failed to make a timely payment, and stated that he had paid Shea enough

---

[2] The facts in this section are drawn from the complaint and taken as true for the purposes of evaluating the motion to dismiss. See U.S. ex rel. Booker v. Pfizer, Inc., 9 F. Supp. 3d 34, 41 (D. Mass. 2014).

2

money. Id. ¶ 14. Shea insisted that Millett adhere to the agreement, and Millett continued making payments. Id. ¶¶ 14–15.

In July 2013, Millett transmitted a "Release" of himself and of ALM to Shea purporting to terminate any obligations that Millett or ALM had to continue making payments to Shea. Id. ¶ 15. Shea rejected the Release, and Millett continued to make payments until the second quarter of 2016, at which point Millett stopped making payments altogether. Id.

## II. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). While detailed factual allegations are not required, the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citations omitted). The facts alleged, taken together, must "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570).

When assessing the sufficiency of a complaint, the court first "separate[s] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Next, the court "determine[s] whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224). "[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Ocasio-Hernandez v.

3

Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a claim may be dismissed. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

### III. DISCUSSION

#### A. Chapter 93A Claim (Count II)

Defendants Millett and ALM seek dismissal of Shea's Chapter 93A claim. Chapter 93A creates a private cause of action against those who engage in "unfair or deceptive acts or practices" in the conduct of trade or commerce. Mass. Gen. Laws ch. 93A, §§ 2, 11. To be considered unfair, the "conduct in question must fall within 'the penumbra of some common-law, statutory, or other established concept of unfairness' or be 'immoral, unethical, oppressive or unscrupulous.'" Jofran Sales, Inc. v. Watkins & Shepard Trucking, Inc., 216 F. Supp. 3d 206, 215 (D. Mass. 2016) (quoting Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 40 (1st Cir. 2000)). An act or practice is "deceptive" where it "'possesses a tendency to deceive' and 'could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'" Full Spectrum Software, Inc. v. Forte Automation Sys., Inc., 858 F.3d 666, 671–72 (1st Cir. 2017) (quoting Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016)).

Here, Shea asserts that Millett attempted to condition payment on Shea's agreement to release his right to collect future payments, and he argues that this violated Chapter 93A. Defendants contend that Shea alleges only an ordinary breach of contract, and therefore fails to plead a Chapter 93A violation. As Defendants rightly point out, "a breach of contract, standing alone, is not an unfair trade practice under c. 93A." Samia Cos. LLC v. MRI Software LLC, 898 F. Supp. 2d 326, 345 (D. Mass. 2012) (quoting Zabin v. Picciotto, 896 N.E.2d 937, 963 (Mass. App. Ct. 2008)). "[A] party's refusal to make payments due under a contract does not [violate

4

Chapter 93A] where the party, in good faith, disputes its obligation to make the payments." Zabin, 896 N.E.2d at 963; accord Duclersaint v. Fed. Nat'l Mortg. Ass'n, 696 N.E.2d 536, 540 (Mass. 1998). A breach of contract only violates Chapter 93A when it is "both knowing and intended to secure unbargained-for benefits to the detriment of the [non-breaching] party," thus "exceed[ing] . . . mere self-interest" and "rising instead to the level of commercial extortion or a similar degree of culpable conduct." Samia Cos., 898 F. Supp. 2d at 345 (quoting Zabin, 896 N.E.2d at 963); accord Commercial Union, 217 F.3d at 40; see, e.g., Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55–56 (1st Cir. 1998) (breach violated Chapter 93A where party withheld payment to force counterparty to accept discounted settlement of its claims for payment); Hannon v. Original Gunite Aquatech Pools, Inc., 434 N.E.2d 611, 615, 618 (Mass. 1982) (submission of low bid followed by demand for more money after signing contract would violate Chapter 93A).

The complaint alleges that Millett threatened to withhold payment due under the contract unless Shea submitted to the imposition of a time limit on his claim to 10% of the royalties paid by Arthrex. Compl. ¶¶ 13–15. Construing the complaint liberally, Millett's threats to withhold payment derived not from a good faith interpretive disagreement as to his obligations under the contract, but instead, from an intent to pressure Shea into forfeiting his ongoing right to a share of Millett's royalties from Arthrex. Millett's demands can thus be construed as a disregard of his contractual duties for the purpose of securing an unbargained-for benefit—namely, a time limit on his obligation to share the Arthrex royalties with Shea. Compare Striar v. Am. Med. Int'l, Inc., 695 N.E.2d 1079, 1087 (Mass. App. Ct. 1998) (failure to make contract payments was not unfair trade practice where parties had genuine difference of opinion as to amounts due under contract) with Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18–19 (1st Cir.

5

1985) (upholding finding of Chapter 93A violation where defendant withheld payment not due to dispute over liability or inability to pay, but rather as a "wedge . . . to enhance [defendant's] bargaining power") and Cmty. Builders, Inc. v. Indian Motorcycle Assocs., 692 N.E.2d 964, 978–79 (Mass. App. Ct. 1998) (failure to make payments violated Chapter 93A where party withheld payment to pressure counterparty to compromise its claims for payment). While discovery may reveal that Millett had a good faith basis for contesting his obligations under the contract, Shea has alleged facts sufficient to support a claim under Chapter 93A against Millett. See, e.g., NExTT Solutions, LLC v. XOS Techs., Inc., 113 F. Supp. 3d 450, 460 (D. Mass. 2015) (declining to dismiss Chapter 93A claim where plaintiff alleged that defendant intentionally withheld royalty payments after having obtained access to and benefitted from plaintiff's services and business contacts).

Millett and ALM further argue that Shea's claim under Chapter 93A must be dismissed because the complaint does not allege that the events underlying that claim occurred "primarily and substantially" in Massachusetts. A Chapter 93A claim cannot be maintained unless "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." Sonoran Scanners, Inc. v. PerkinElmer, Inc., 585 F.3d 535, 546 (1st Cir. 2009) (quoting Kuwaiti Danish Computer Corp. v. Digital Equip. Co., 781 N.E.2d 787, 799 (Mass. 2003)); see Mass. Gen. Laws ch. 93A, § 11. "The center of gravity inquiry examines the actionable conduct as opposed to conduct that is neither unfair nor deceptive." Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc., No. 13-cv-11302-NMG, 2014 WL 1203106, at *8 (D. Mass. Mar. 19, 2014). Determining whether the conduct at issue occurred primarily and substantially within Massachusetts is "fact-intensive," Evergreen Partnering Grp., Inc. v. Pactiv Corp., No. CIV.A. 11-10807-RGS, 2014 WL 304070, at *4 (D. Mass. Jan. 28, 2014), but is

6

nevertheless "a question of law," Blue Cross & Blue Shield v. AstraZeneca Pharms. LP, 582 F.3d 156, 194 (1st Cir. 2009).

The center of gravity analysis is not based on a formula "identified by any particular factor or factors" because a significant factor that exists in one case may not exist in another. Kuwaiti, 781 N.E.2d at 798–99. However, courts may consider "where the defendant committed the deceptive acts and practices," "where the plaintiff received and acted upon the deceptive or unfair statements," and "the situs of the plaintiff's losses due to the unfair or deceptive acts or practices." Reicher v. Berkshire Life Ins. Co. of Am., No. 02-cv-10868-RWZ, 2002 WL 31426758, at *2 (D. Mass. Oct. 29, 2002) (quoting Arthur D. Little, 928 F. Supp. at 1208), aff'd, 360 F.3d 1 (1st Cir. 2004). "[A]ttempts, however, to single out particular factors that might control the functional inquiry and then to place these factors in some order of importance, are necessarily not fully satisfactory." Kuwaiti, 781 N.E.2d at 799 (quoting Sonesta Int'l Hotels Corp. v. Cent. Fla. Investments, Inc., 712 N.E.2d 607, 611 (Mass. App. Ct. 1999)). Accordingly, courts differ as to which factor should carry the most weight in the analysis. Compare, e.g., Reicher, 2002 WL 31426758, at *2 (noting that the location of recipient of deception at time of reliance is "of particular import") with Spring Investor Servs., Inc. v. Carrington Capital Mgmt., LLC, No. 10-cv-10166-FDS, 2013 WL 1703890, at *12 (D. Mass. Apr. 18, 2013) (explaining that the inquiry focuses on "conduct said to give rise to the violation; other conduct . . . may not be considered on the question"). "In all events, however, the focus of the inquiry should be on 'the purpose and scope' of Chapter 93A." In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 194 (1st Cir. 2009) (quoting Kuwaiti, 781 N.E.2d at 799).

Defendants contend that Shea's claim is not centered "primarily and substantially" in Massachusetts because Defendants themselves are based in Colorado and the complaint does not

7

specify which, if any, of the events it describes occurred in Massachusetts. The only references to Massachusetts in the complaint are that Shea currently lives in Massachusetts and that ALM was incorporated here. The complaint is silent as to where Millett allegedly attempted to pressure Shea into forfeiting contractual rights, what medium Millett used to carry out these attempts, where Shea was when he received Millett's threats, and where the situs of Shea's losses would have been. In the absence of at least some assertion that the conduct giving rise to the Chapter 93A violation occurred in, was intended to influence behavior in, or was designed to cause losses in Massachusetts, the allegations are not sufficient to state a Chapter 93A claim. See, e.g., Controlled Kinematics, Inc. v. Novanta Corp., No. 17-cv-11029-ADB, 2017 WL 5892200, at *3–5 (D. Mass. Nov. 29, 2017) (dismissing Chapter 93A claim where complaint failed to expressly allege any conduct which occurred in Massachusetts); Spring Investor Servs., 2013 WL 1703890, at *12–12 (dismissing Chapter 93A claim where only alleged connection to Massachusetts was plaintiff's residence); Pine Polly, 2014 WL 1203106, at *7–8 (dismissing Chapter 93A claim where parties' transactions occurred in several states and plaintiff failed to specify in which state defendants' conduct caused plaintiff harm). Therefore, the Chapter 93A claim is dismissed without prejudice, and Shea is granted leave to amend his complaint.

  **B. Promissory Estoppel Claim (Count III)**

Millett also argues for dismissal of the promissory estoppel claim. To plead promissory estoppel under Massachusetts law,[3] a plaintiff must allege that (1) the defendant "made an unambiguous promise" which he or she "should have reasonably expected to 'induce action or

---

[3] Defendants cite both Massachusetts and Colorado case law in their motion to dismiss, but do not advocate for the Court's adoption of either. See [ECF No. 8 at 7 n.3]. Because (as Defendants point out) the two jurisdictions appear to have similar standards for promissory estoppel, the Court will employ Massachusetts law for the purposes of this order without reaching a final determination as to which jurisdiction's substantive law governs future proceedings.

forbearance of a definite and substantial character'" on the part of the plaintiff; (2) the promise actually induced such action or forbearance; and (3) "injustice can be avoided only by enforcement of the promise." Suzuki v. Abiomed, Inc., 253 F. Supp. 3d 342, 351 (D. Mass. 2017) (quoting Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 203 (1st Cir. 2004)); see also Jones v. Denver Pub. Sch., 427 F.3d 1315, 1325 (10th Cir. 2005) (similar standard under Colorado law).

As Millett correctly points out, promissory estoppel is not available where there is an enforceable contract. See Malden Police Patrolman's Ass'n v. Malden, 82 N.E.3d 1055, 1064 (Mass. App. Ct. 2017); accord Wheat Ridge Urban Renewal Auth. v. Cornerstone Grp. XXII, LLC, 176 P.3d 737, 741 (Colo. 2007). The Federal Rules of Civil Procedure, however, allow for the pleading of alternative claims. Fed. R. Civ. P. 8(d)(2); see also Suzuki, 253 F. Supp. 3d at 351–52. Although Shea will not be permitted to recover under both claims, he is not obligated to predict at the outset of litigation which legal theory will ultimately prevail, or to choose only one theory to pursue. See Rodriguez-Suris v. Montesinos, 123 F.3d 10, 20 (1st Cir. 1997); see also 5 Charles Alan Wright et al., Federal Practice & Procedure § 1282 (3d ed. 2017).

Millett argues that Shea fails to plead actual reliance on any promise made by Millett, or that injustice can only be avoided by enforcing Millett's promise. Shea asserts in his opposition brief that the allegations in his complaint permit an inference that, by utilizing Shea's network of contacts for Millett's benefit, Shea's relationship with those contacts was damaged. The complaint, however, does not state that Shea utilized his network of contacts in any way. Rather, the complaint alleges that Millett requested Shea's assistance in obtaining an agreement with Arthrex, but that Shea approached individuals at "several international medical device firms." Compl. ¶¶ 7, 10. It does not provide enough information to draw an inference that Shea utilized

9

his network of contacts to market the device. The complaint does assert that Shea relied upon Millett's promises "to his detriment," and that Shea "has been damaged by his reasonable reliance thereon," see Compl. ¶¶ 26–28, but it does not provide any guidance as to the particular detriment or damage for which Shea now demands recovery from Millett. To infer that Shea damaged his relationship with his personal contacts in promoting Millett's product would require the Court to assume facts beyond those stated in the complaint. The vague and conclusory language of the complaint fails to put Millett on fair notice as to the nature of Shea's estoppel claim against him, and therefore fails to meet the pleading standards of the federal rules. See Twombly, 550 U.S. at 555 ("[The complaint must] give the defendant fair notice of what the claim is and the grounds upon which it rests." (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957))); Negron v. Turco, 253 F. Supp. 3d 361, 363 (D. Mass. 2017) ("[The complaint] must afford the defendants a meaningful opportunity to mount a defense." (quoting Diaz-Rivera v. Rivera-Rodriguez, 377 F.3d 119, 123 (1st Cir. 2004))); Ocaso, S.A. v. P.R. Maritime Shipping Auth., 915 F. Supp. 1244, 1253 (D.P.R. 1996) ("Fairness dictates that defendants be given a minimum degree of forewarning as to the underlying basis for the relief sought.").

    **C.**    **Claim Against ALM**

Defendants contend that ALM should be dismissed from this lawsuit because the complaint fails to allege any involvement on ALM's part, and because the only claim clearly asserted against ALM is the defective Chapter 93A claim. Shea responds that the allegations in the complaint sufficiently demonstrate that ALM "was implicated" in Millett's violation of Chapter 93A, but he admits that the Chapter 93A claim is the only claim he intended to state against ALM. The Court agrees with Defendants that the allegations against ALM are vague at best; in fact, it is not entirely clear from the face of the complaint which claims are asserted

against ALM. The only reference to ALM in the complaint is that the Release sent to Shea purported to release both Millett and ALM from Millett's payment obligations. Compl. ¶ 15. Otherwise, the complaint says nothing about ALM's involvement in any of the alleged events. Even accepting as true the complaint's sole allegation concerning ALM, the mere appearance of ALM's name on the allegedly extortionate Release cannot, without more, be sufficient ground upon which to base a Chapter 93A claim. Without any allegation that Shea had a contract with ALM (which could then possibly render the Release extortionate, as described supra), or that ALM otherwise engaged in unfair or deceptive acts or practices which caused Shea harm, the complaint fails to allege a Chapter 93A claim against ALM. Even if the complaint did sufficiently implicate ALM in any Chapter 93A violation, it still falls short of alleging that the violation occurred primarily and substantially in Massachusetts, as described supra. Thus, Shea has failed to state a Chapter 93A claim against ALM.

Finally, Shea asserts in his opposition brief that the "identity of interest" between Millett and ALM allows for the sharing of liability between them. However, Shea has not cited any legal authority to support an identity of interest theory of liability or any other theory of vicarious liability. To the extent that Shea's opposition brief alludes to a veil-piercing theory, he has not developed this argument sufficiently to allow the Court to make a determination as to whether veil piercing is appropriate here. Shea also argues that he could decide to assert additional claims against ALM after discovery, but "a plaintiff whose complaint does not state an actionable claim has no license to embark on a fishing expedition" to discover one. Artuso v. Vertex Pharms., Inc., 637 F.3d 1, 8 (1st Cir. 2011). Thus, Shea's claim against ALM is dismissed, but with leave to renew.

## IV. CONCLUSION

Accordingly, Defendants' motion to dismiss [ECF No. 7] is <u>GRANTED</u>. Counts II and III of the complaint are dismissed without prejudice. Plaintiff's request for leave to amend his complaint [ECF No. 9 at 5–6] is granted. Plaintiff shall file an amended complaint by <u>May 21, 2018</u>.

**SO ORDERED.**

May 3, 2018

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE