UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH B. SHEA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PETER MILLETT and ALM RESEARCH LLC,<br><br>　　　　Defendants. | Civil Action No. 17-cv-12233-ADB |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

BURROUGHS, D.J.

On October 17, 2017, Plaintiff Joseph B. Shea filed a Complaint against Defendants Peter Millett ("Millett") and ALM Research LLC ("ALM") in Middlesex Superior Court, seeking recovery of unpaid royalties for services rendered. [ECF No. 1-1]. Defendants jointly removed the state court action to this Court on November 13, 2017. [ECF No. 1]. On May 3, 2018, the Court granted Defendants' Partial Motion to Dismiss without prejudice and granted Shea leave to file an amended pleading. [ECF No. 14 ("Motion to Dismiss Order")]. On May 21, 2018, Shea filed his First Amended Complaint, which asserts claims against Millett for breach of contract, promissory estoppel, declaratory judgment or injunctive relief, and a violation of Mass. Gen. Laws ch. 93A. [ECF No. 15 ("Amended Complaint" or "Am. Compl.")]. Now pending is ALM's Motion to Dismiss. [ECF No. 17]. For the reasons set forth below, the Court GRANTS ALM's motion.

1

## I. FACTS ALLEGED IN THE COMPLAINT[1]

Millett, an orthopedic surgeon residing in Colorado, contributed to the development of medical products related to shoulder surgery. See Am. Compl. ¶¶ 2, 5, 17–18. Millett unsuccessfully sought for years to obtain a royalty agreement with Arthrex, Inc. ("Arthrex"), a medical device and research company. Id. ¶ 20. In 2010, Millett approached Shea, a Massachusetts resident and former sales representative of Arthrex, to request Shea's assistance in brokering a royalty agreement between Millett and Arthrex. Id. ¶¶ 1, 21–22. Millett offered Shea 15% of any royalties paid by Arthrex for five years in exchange for Shea's services. Id. ¶ 22. Shea responded that he would only accept an arrangement in which he would be compensated throughout the life of any royalty agreement he brokered, and proposed instead that he receive 10% of all royalties over the life of any potential royalty agreement between Arthrex and Millett. Id. ¶ 23. Millett accepted Shea's proposal, and Shea proceeded to market Millett's product to several medical device firms that were competitors of Arthrex. Id. ¶¶ 23, 32–36. Ultimately, as a result of Shea's efforts, Arthrex entered into a royalty agreement with Millett. Id. ¶ 42.

Millett then began to remit to Shea 10% of the quarterly royalty payments that he received from Arthrex, as agreed. Id. ¶ 45. Two years into the agreement, however, Millett failed to timely submit Shea's quarterly payment. Id. ¶ 47. After Shea called Millett about the missed payment and insisted that he honor their agreement, Millett resumed making payments to Shea. Id. ¶ 47–49. In 2013, Millett transmitted a "Release" to Shea purporting to impose a term limitation on the parties' agreement for no consideration. Id. ¶¶ 49–50. Shea rejected the

---

[1] The facts in this section are drawn from the Amended Complaint and taken as true for the purposes of evaluating the motion to dismiss. See United States ex rel. Booker v. Pfizer, Inc., 9 F. Supp. 3d 34, 41 (D. Mass. 2014).

Release, and Millett continued to make payments until October 2014, when Millett delayed payment of the third quarter royalty payment while attempting to extract a significant reduction in the amount of compensation due to Shea. Id. ¶¶ 51–52. Shea rebuffed those efforts, and Millett eventually paid him his full quarterly payment. Id. ¶ 52. In or around December 2015, Millett claimed that his royalty agreement with Arthrex was scheduled to end during the first quarter of 2016, but he failed to provide any documentation of the contract termination to Shea in response to his requests. Id. ¶ 53. The last quarterly payment that Millett made to Shea was in the second quarter of 2016. Id. ¶ 56. In 2017, Shea learned that Millett's contract with Arthrex was never terminated and that Arthrex has continued to make ongoing royalty payments him. Id. ¶ 55. When Shea confronted Millett about his continued receipt of payments from Arthrex, Millett responded that he did not "deserve" any further payments for his work. Id.

## II.   STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). While detailed factual allegations are not required, the complaint must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted). The facts alleged, taken together, must "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged.'" Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

When assessing the sufficiency of a complaint, the Court first "separate[s] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Maddox, 732 F.3d at 80 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Next, the Court "determine[s] whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Maddox, 732 F.3d at 80 (quoting Morales-Cruz, 676 F.3d at 224). "[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," however, a claim may be dismissed. Iqbal, 556 U.S. at 679.

### III. DISCUSSION

ALM seeks dismissal of Shea's Amended Complaint as to ALM on the ground that it fails to allege that ALM committed any wrongdoing or otherwise assert any claims against it. [ECF No. 18 at 3]. Shea responds that, drawing all inferences in his favor, he has stated claims against ALM as Millett's alter ego under a reverse corporate veil piercing theory. [ECF No. 22 at 3].

Under Massachusetts and Colorado law, a party may seek to pierce a corporate veil under an alter ego theory which is equitable in nature.[2] "Traditional" piercing of the corporate veil

---

[2] ALM cites both Massachusetts and Colorado case law in its reply brief, but does not advocate for the Court's adoption of either. [See ECF No. 25 at 1–4]. As explained infra at 6–7, Shea

occurs when a court "imposes liability on individual shareholders for the obligations of the corporation." In re Phillips, 139 P.3d 639, 644 (Colo. 2006). Shea seeks to proceed under a reverse veil piercing theory, whereby a court "disregard[s] the corporate fiction and allow[s] liability to be imposed on the corporation for acts of a dominant shareholder or other corporate insider." Id. at 644. Under Colorado law, "[a] court may reverse pierce the corporate veil and obtain the assets of a corporation for the obligations of a controlling shareholder or other corporate insider only upon a clear showing that (1) the controlling insider and the corporation are alter egos of each other,[3] . . . (2) justice requires recognizing the substance of the relationship over the form because the corporate fiction is utilized to perpetuate a fraud or defeat a rightful claim, . . . and (3) an equitable result is achieved by piercing." Id. at 646 (citations omitted).

The Massachusetts Supreme Judicial Court "has never explicitly, or even inferentially, adopted reverse veil piercing in any form." In re Raymond, 529 B.R. 455, 475–76 (Bankr. D. Mass. 2015) (noting that "[t]here are few reported decisions addressing the availability of the reverse veil piercing doctrine under Massachusetts law, and those that do, reject reverse veil piercing when insiders attempt to reverse pierce corporate veils" (collecting cases)). In the

---

fails to state a claim under the law of either jurisdiction, and the Court declines to reach a final determination as to which jurisdiction's substantive law governs any veil piercing claim.
[3] "An alter ego relationship exists when the corporation is a 'mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist.'" In re Phillips, 139 P.3d 639, 644 (Colo. 2006) (citation omitted). "In establishing whether such unity of interest exists as to disregard the corporate fiction and treat the corporation and shareholder as alter egos, courts consider a variety of factors, including whether (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a 'mere shell,' (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes." Id. (citation omitted).

5

context of traditional corporate veil piercing, under Massachusetts law, courts holistically consider twelve factors when determining whether piercing the corporate veil is appropriate:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

Att'y Gen. v. M.C.K., Inc., 736 N.E.2d 373, 380 n.19 (Mass. 2000). "These factors are not simply added up, but rather are considered in an integrated manner based on all of the facts presented." Lothrop v. N. Am. Air Charter, Inc., 95 F. Supp. 3d 90, 101 (D. Mass. 2015).

Here, Shea's Amended Complaint contains just three references to ALM. First, ALM is named as a party on the Amended Complaint's caption. Am. Compl. at 1. Second, Paragraph 3 alleges that:

> ALM Research LLC was a Massachusetts based limited liability company owned and controlled by Dr. Millett which, upon information and belief, was reconstituted as a Colorado limited liability company after its formation in Massachusetts. Dr. Millett is the manager of ALM Research. Upon information and belief ALM Research was formed by Dr. Millett in connection with his research and development efforts related to products developed for Arthrex and otherwise.

Am. Compl. ¶ 3. Finally, Paragraph 57 alleges that "[p]ayments have been made to Mr. Shea both by Dr. Millett and by his company, ALM Research LLC. To date Dr. Millett has received in excess of $7 million of royalty payments." Id. ¶ 57. Notably, Shea does not contest that the four counts and the relief sought in the Amended Complaint are directed at Millett, not ALM. Instead, Shea argues that Millett, in his answer to the Amended Complaint, has conceded that ALM is a limited liability company that he formed, controls, owns, and manages, and that Shea "should not be forced to pick a defendant where there is a complete overlap of interest between" Millett and ALM. [ECF No. 22 at 2, 5].

The Court finds that Shea's Amended Complaint does not set forth any facts that, taken as true, would allow this Court to pierce ALM's corporate veil under either Colorado or Massachusetts law. To survive dismissal, "labels and conclusions" are insufficient—a complaint must allege facts with "enough heft to *show* that the pleader is entitled to relief." Ocasio-Hernandez, 640 F.3d at 8 (quoting Twombly, 550 U.S. at 555, 557). In the Amended Complaint, Shea fails to set forth any facts from which the Court could find that ALM is liable for any royalty payments that Millett owes him or that ALM has otherwise done anything to injure him. The allegations that Millett owns, controls, and manages ALM, that Millett formed ALM in connection with his research and development efforts related to products developed for Arthrex, and that ALM made royalty payments to Shea, are simply insufficient to set forth even a modest factual basis for finding that Millett and ALM are alter egos of each other, that Millett utilized the corporate form to perpetuate fraud, or that equity requires piercing the corporate veil. Shea, in his opposition to ALM's motion, argues that the 2013 Release referenced in Paragraph 49 of the Amended Complaint "specifically sought to have ALM Research LLC released from all potential liability to Mr. Shea" and is "damning evidence of Defendants' liability." [ECF No. 22 at 4–5]. Shea cannot amend his Amended Complaint by asserting new facts or theories in his opposition brief, however, and in any event, these assertions would be insufficient to support piercing the corporate veil under Colorado or Massachusetts law. Accordingly, the Amended Complaint as to ALM will be dismissed.

ALM further argues that dismissal should be with prejudice because Shea failed to address the pleading deficiencies that the Court identified in its Motion to Dismiss Order. [ECF No. 18 at 4]. While ALM is correct that the Court highlighted specific deficiencies that Shea did not address in his subsequent pleading, and that "a plaintiff whose complaint does not state an

actionable claim has no license to embark on a fishing expedition in an effort to discover a cause of action," the Court will not foreclose a veil piercing claim at this time. Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 8 (1st Cir. 2011). If, after conducting permissible discovery, Shea uncovers grounds for his claim that ALM is the alter ego of Millett and that Millett is abusing the corporate form in order to shield himself from liability against Shea, then the Court will consider a timely motion to amend under Federal Rule of Civil Procedure 15(a)(2) supported by such newly discovered evidence.

**IV. CONCLUSION**

Accordingly, ALM's motion to dismiss [ECF No. 17] is GRANTED.

**SO ORDERED.**

January 14, 2019　　　　　　　　　　　　　　　　　　/s/ Allison D. Burroughs
　　　　　　　　　　　　　　　　　　　　　　　　　ALLISON D. BURROUGHS
　　　　　　　　　　　　　　　　　　　　　　　　　U.S. DISTRICT JUDGE